UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5358-CAS (CWx) | Date | August 5, 2013 |
|---|---|---|---|
| Title | INTERNET BRANDS V. ULTIMATECOUPONS.COM, LLC | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Christopher Frost<br>Richard Leonard | Pamela Deitchle |

**Proceedings:** **PLAINTIFF'S MOTION FOR A DIRECTED VERDICT** (filed July 1, 2013) [135]

## I.  INTRODUCTION

On June 28, 2011, plaintiff Internet Brands, Inc. filed the instant action against Ultimatecoupons.com, LLC ("UC") and two individuals, Jeffrey A. Grossman and Andrew E. Kardon (collectively "defendants").[1]  On December 5, 2011, plaintiff filed its First Amended Complaint ("FAC"), alleging (1) breach of written contract, (2) fraud by promise made without intent to perform, (3) fraud by omission, (4) fraud by intentional misrepresentation, (5) negligent misrepresentation, (6) money had and received, and (7) violation of California Bus. & Prof. Code §§ 17200 et seq. ("UCL").

On January 23, 2012, the Court granted defendants Grossman and Kardon's motion to dismiss the first and sixth claims asserted against them.  The Court denied defendants' motion to dismiss the third, fourth, fifth, and seventh claims.  Dkt. No. 15.  Thereafter, defendants filed a counterclaim against plaintiff, asserting claims for (1) accounting and (2) breach of contract.  Dkt. No. 18.

On April 15, 2013, the Court denied plaintiff/counter-defendant's motion for summary judgment in its entirety, and granted in part and denied in part defendants' and counterclaimants' motion for summary judgment.  The case then proceeded to a jury trial on June 5, 2013, with the jury returning a special verdict on June 13, 2013.  The jury's verdict is as follows:

---

[1] UltimateCoupons.com, LLC is now known as JAG Ventures, LLC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5358-CAS (CWx) | Date | August 5, 2013 |
|---|---|---|---|
| Title | INTERNET BRANDS V. ULTIMATECOUPONS.COM, LLC | | |

**QUESTION NO. 1**
    Was there a breach of the covenant not to compete set forth in section 4.4 of the Asset Purchase and Sale Agreement because of competitive business activity that was prohibited by the contract?

          X   Yes            _____No

**QUESTION NO. 2**
    If you find that the covenant not to compete was breached, when did this breach occur?
          Month  DEC       Year  2010

**QUESTION NO. 3**
    Did Internet Brands waive any breach of the covenant not to compete by failing to object to the Joeshopping.com website before April 30, 2011, when the covenant not to compete expired?

          _____Yes            X   No

**QUESTION NO. 4**
    If you find that the covenant not to compete was breached, was the breach sufficiently material to excuse Internet Brands from paying the Year Three Earnout payment?
          _____Yes            X   No

**QUESTION NO. 5**
    If you find that any breach did not excuse Internet Brand's payment of the Third Year Earnout, did Internet Brands nonetheless suffer monetary damages by any failure of JAG Ventures to comply with the non-competition provision in the parties' contract?

          _____Yes            X   No

                    ***

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5358-CAS (CWx) | Date | August 5, 2013 |
|---|---|---|---|
| Title | INTERNET BRANDS V. ULTIMATECOUPONS.COM, LLC | | |

**QUESTION NO. 7**
　　Did Internet Brands breach section 1.9 of the parties' agreement which prohibited commingling or aggregating any of the business affiliate accounts?

　　　　  X  Yes　　　　＿＿＿No

**QUESTION NO. 8**
　　If you find that Internet Brands breached section 1.9, was the breach sufficiently material to excuse JAG Ventures from compliance with the non-compete provision in section 4.4 of the Asset Purchase and Sale Agreement?

　　　　＿＿＿Yes　　　　  X  No

**QUESTION NO. 9**
　　If you find that Internet Brands breached section 1.9 of the parties' agreement by failing to segregate affiliate accounts, what damages, if any, did Kardon and JAG Ventures suffer as a result?

　　　　$　　　0　　　


**QUESTION NO. 10**
　　Was there a material breach of the earnout payment obligation for Year Two under section 1.3 of the Asset Purchase and Sale Agreement?

　　　　＿＿＿Yes　　　　  X  No

**QUESTION NO. 11**
　　If you find that Internet Brands breached its obligation with respect to the Year Two earnout payment, what damages, if any, did Kardon and JAG Ventures suffer as a result?
　　　　$　　　N/A　　　

**QUESTION NO. 12**
　　The Court has previously found that Internet Brands has breached section 1.4(b) of the Asset Purchase and Sale Agreement by failing to provide an accounting. If you found

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5358-CAS (CWx) | Date | August 5, 2013 |
|---|---|---|---|
| Title | INTERNET BRANDS V. ULTIMATECOUPONS.COM, LLC | | |

a breach of the covenant not to compete and that such breach was material, does that breach excuse Internet Brands' breach of its accounting obligation?

\_\_\_\_\_Yes        \_\_X\_\_No

**QUESTION NO. 13**
    If you find that the breach of the accounting obligation in section 1.4(b) of the parties agreement was not excused, what damages, if any, did Kardon and JAG Ventures suffer as a result?

    $_____30,000_____

**QUESTION NO. 14**
    Whether or not you found in Question No. 1 above that JAG Ventures breached Section 4.4 of the Asset Purchase and Sale Agreement, what is the amount, if any, of the Year 3 Earnout Payment?

    $\_\_1,528,596.96\_\_

Dkt. No. 130.

    On July 1, 2013, plaintiff filed a motion for a directed verdict. Defendants opposed the motion on July 15, 2013, and plaintiff replied on July 22, 2013. The Court held a hearing on August 5, 2013. After considering the parties' arguments, the Court finds and concludes as follows.

**II.    LEGAL STANDARD**

    Although plaintiff's motion is styled as one for a "directed verdict," the Court will construe the motion as one for judgment as a matter of law under Federal Rule of Civil Procedure 50.

    Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." Fed. R. Civ. P. 50(a)(1); see also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 139, 149

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5358-CAS (CWx) | Date | August 5, 2013 |
|---|---|---|---|
| Title | INTERNET BRANDS V. ULTIMATECOUPONS.COM, LLC | | |

(2000). If the court does not grant a motion for judgment as a matter of law pursuant to Rule 50(a), a party may file a renewed motion for judgment as a matter of law after the trial. Fed. R. Civ. P. 50(b). It is well-settled that the standard for judgment as a matter of law is the same as the standard for summary judgment. Reeves, 530 U.S. at 150 (citing Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 250-52 (1986)).

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed. R. Civ. P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex Corp., 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997); see also Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994) (articulating the same standard in the context of a directed verdict). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5358-CAS (CWx) | Date | August 5, 2013 |
|---|---|---|---|
| Title | INTERNET BRANDS V. ULTIMATECOUPONS.COM, LLC | | |

In a motion for summary judgment, a court must review the record "taken as a whole." Matsushita, 475 U.S. at 587. Similarly, in entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. Reeves, 530 U.S. at 150. In so doing, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Id. (citations omitted); see also Berry, 39 F.3d at 1057. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 447 U.S. at 255. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. Reeves, 530 U.S. at 151 (citing 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529 at 299 (2d ed. 1995)). In other words, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Reeves, 530 U.S. at 151 (citing Wright & Miller, supra, at 300).

## III.   DISCUSSION

The facts of this case are discussed in detail in the Court's order on the parties' cross-motions for summary judgment and known to the parties, and will only be discussed to the extent necessary herein. See Dkt. No. 70. The Court discusses each of the grounds for plaintiff's motion below.

### A.   Breach of the Non-Compete Clause

Notwithstanding the jury's finding to the contrary, plaintiff contends that the Court must conclude, as a matter of law, that defendants' breach of the non-compete provision in the Asset Purchase and Sale Agreement (the "Agreement") excused plaintiff's future performance under the Agreement. Among other contentions, plaintiff is of the view that *any* breach of the non-compete must be considered material under the parties' agreement.

Plaintiff's argument is without merit. Nothing in the language or structure of the Agreement compels the conclusion that any breach of the non-compete provision, even a de *minimis* one, excuses plaintiff's payment of the Year Three Earnout. Indeed, it was plaintiff who sought to have the jury instructed as to the proper definition of materiality, including several factors that should be considered in determining whether a failure to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5358-CAS (CWx) | Date | August 5, 2013 |
|---|---|---|---|
| Title | INTERNET BRANDS V. ULTIMATECOUPONS.COM, LLC | | |

perform is in fact material in the context of a particular contractual obligation. See Brown v. Grimes, 192 Cal. App. 4th 265, 277 (2011) (holding that whether a breach of an obligation is a material breach, excusing future performance, is a question of fact). Nothing in the language of the Agreement contemplates that even a de minimis breach of the non-compete provision would entitle plaintiff to forego paying the Year Three Earnout payment in its entirety. It would defy logic to find that any breach of the non-compete clause must be considered material as a matter of law, absent unequivocal contractual language to this effect. This question was, therefore, properly submitted to the jury.

The jury found that defendants' breach of the non-compete provision was insufficient to excuse plaintiff's payment of the Year Three Earnout obligation, and that plaintiff suffered no monetary damages as a result of defendants' breach. These findings, taken together, resolve the question of whether defendants' breach of the non-compete provision could excuse plaintiff's obligation to pay the Year Three Earnout payment, and the Court finds no reason to disturb them. The jury had before it ample evidence from which to conclude that defendant's breach of the non-compete provision was only *de minimis* and not of the sort that would justify excusing plaintiff's obligation to pay the Year Three Earnout payment. It is undisputed that the entire JoeShopping website grossed less than $900 in the three-year non-compete period, including payments related to the "non-coupon" portions of the website which predominated during the site's operation. Accordingly, the Court denies plaintiff's motion with respect to the question of whether its obligation to pay the third-year earnout payment was excused.

In the alternative, plaintiff contends that even if the breach of the non-compete did not excuse its entire performance, all net revenues that plaintiff earned after December 27, 2010—the date the jury found the breach occurred—should be excluded in calculating the amount of the third-year earnout payment. This argument is without merit for the same reasons noted above. As noted, only a material breach of the Agreement could excuse plaintiff's future performance. Therefore, it is irrelevant that the jury found that counterclaimants violated the non-compete clause in December 2010, as the jury also found that this breach was not material, a finding that is clearly supported by the evidence. As such, because no material breach occurred at any point, plaintiff is not entitled to any reduction in the amount of the third-year payment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5358-CAS (CWx) | Date | August 5, 2013 |
|---|---|---|---|
| Title | INTERNET BRANDS V. ULTIMATECOUPONS.COM, LLC | | |

Plaintiff is correct that this amount must be offset by the amount that it overpaid in Year Two, but in fact, the jury's verdict already incorporates this deduction. As the Court found on the parties' cross-motions for summary judgment, the undisputed evidence demonstrated that the parties agreed that to the extent that there was in fact an overpayment by plaintiff in year three, "plaintiff [could] . . . offset this amount from its payment obligations for year three." Dkt. No. 70 at 20; see also Dkt. No. 41 at 15 (Defendants' Motion for Summary Judgment) ("The parties have always agreed that there was an overpayment of $130,429.41 for Year 2, excluding any disputed "Direct Marketing Costs" deductions that were never resolved."). By finding that plaintiff did not breach its obligations with respect to the Year Two Earnout payment (Question No. 10), the jury found that the disputed "Direct Marketing Costs" were in fact properly deducted in calculating the website's net revenues.

By all appearances, however, the jury has already deducted this amount from the Year Three Earnout payment. The jury first found that the Year Three payment should be $1,659,026.37, and then deducted $130,429.41 from this amount, which is the precise amount of the Year Two overpayment. After making this deduction, the jury found that the Year Three payment should be $1,528,596.96, as indicated on the verdict form. And therefore, the Court construes the verdict to mean that the jury already reduced the Year Three Earnout amount to account for the overpayment, such that there is no need for a further reduction. Accordingly, counterclaimants are entitled to receive the Year Three earnout amount found by the jury, or $1,528,596.96.

### B. Breach of Section 1.9 of the Agreement

The Court further concludes that plaintiff is not entitled to judgment in its favor on counterclaimants' claim with respect to the commingling of the affiliate accounts. Plaintiff's argument that its practice of including multiple websites in the same affiliate account did not breach Section 1.9 of the Agreement, as the various revenue streams were still readily identifiable, is not without some merit. However, whether or not the different revenue streams were identifiable from the affiliate account's reports, a rational jury could find that the inclusion of multiple revenue streams, including the UltimateCoupons site, in the same account amounted to "aggregating" or "commingling" in violation of the parties' agreement. In light of the evidence presented at trial, plaintiff offers no reason to disturb the jury's special verdict on this issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5358-CAS (CWx) | Date | August 5, 2013 |
|---|---|---|---|
| Title | INTERNET BRANDS V. ULTIMATECOUPONS.COM, LLC | | |

### C. Counterclaimants' Damages for Breach of the Accounting Obligation

The jury awarded counterclaimants' $30,000 in damages on their claim for breach of the accounting obligation in the Agreement, based on defendants' expert's testimony at trial that this is the amount that she charged them for her work on this case. Plaintiff contends that this amount was improperly awarded as damages by the jury, and that counterclaimants offered no other evidence of any damages that they suffered as a result of plaintiff's breach of its accounting obligation.

The Court agrees—the cost of expert testimony is not a proper measure of the damages that counterclaimants suffered as a result of the breach of contract in this case.[2] California law determines the award of damages for counterclaimants' breach of contract claim. Under California Civil Code § 3000, the measure of damages for "breach of an obligation arising from contract . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Counterclaimants offered no evidence that all of its expert fees incurred in this litigation were "reasonably foreseeable" as a result of plaintiff's breach of its accounting obligations.

Therefore, the Court finds that a motion for a new trial on the issue of damages, or in the alternative a remittitur, is appropriate. See Fed. R. Civ. P. 59(d) ("No later than 28 days after the entry of judgment, the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion."). As the Ninth Circuit has held:

> When the court, after viewing the evidence concerning damages in a light most favorable to the prevailing party, determines that the damages award is excessive, it has two alternatives. It may grant [a] motion for a new trial or deny the motion conditional upon the prevailing party accepting a remittitur.

---

[2] Moreover, federal law controls the reimbursement of expert witness costs in a federal court sitting in diversity jurisdiction. See Aceves v. Allstate Ins. Co., 68 F.3d 1160 (9th Cir. 1995). Under 28 U.S.C. § 1920, these costs are limited to $40 per day of court attendance.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-5358-CAS (CWx) | Date | August 5, 2013 |
|---|---|---|---|
| Title | INTERNET BRANDS V. ULTIMATECOUPONS.COM, LLC | | |

The prevailing party is given the option of either submitting to a new trial or of accepting a reduced amount of damage which the court considers justified.

Fenner v. Dependable Trucking Co., Inc., 716 F.2d 598, 603 (9th Cir. 1983).

The proper amount of a remittitur is the maximum amount sustainable by the evidence. D & S Redi-Mix v. Sierra Redi-Mix and Contracting Co., 692 F.2d 1245, 1249 (9th Cir. 1982). If the prevailing party refuses to accept the reduced amount, a new trial must be ordered, at least as to the damages for that particular claim. If the party accepts the remittitur, judgment shall be entered for this reduced amount. Fenner, 716 F.2d at 603.

Here, the Court finds that counterclaimants did not demonstrate their entitlement to any damages for the breach of the accounting obligation set forth in section 1.4(b) of the parties' agreement, and therefore the jury's verdict in this regard is excessive. Including the $30,000 related to the cost of counterclaimants' expert, the jury has awarded $1,558,596.96 in total damages to counterclaimants. Accordingly, the Court orders counterclaimants to either (1) accept a remittitur of the total damages award in the amount of $1,528,596.96, or alternatively (2) a new trial limited to the determining the proper damages award.

### IV. CONCLUSION

In accordance with the foregoing, plaintiff's motion for a directed verdict is GRANTED in part and DENIED in part. A judgment shall issue forthwith.

IT IS SO ORDERED.

|  |  | 00 | : | 10 |
|---|---|---|---|---|
|  | Initials of Preparer | | CMJ | |